WO                                                                                                          SH

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roy Bigelow, | No. CV 19-05496-PHX-MTL (ESW) |
| Plaintiff, | |
| v. | **ORDER** |
| Dorothy Igwe, et al., | |
| Defendants. | |

Plaintiff Roy Bigelow, who is currently confined in Arizona State Prison Complex-Florence, East Unit, brought this civil rights case pursuant to 42 U.S.C. § 1983. On screening the First Amended Complaint (Doc. 7) under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment medical claims against Defendants Igwe and Starling in their individual capacities, Arizona Department of Corrections (ADC) Director Shinn in his official capacity, and against private healthcare contractors Corizon and Centurion. (Doc. 8.)  The Court directed these Defendants to answer and dismissed the remaining claims and Defendants. (Doc. 8.)

Pending before the Court is Plaintiff's Motion for Temporary Restraining Order (Doc. 78), which Defendants oppose (Doc. 89).

**I.    Legal Standard**

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520

1  U.S. 968, 972 (1997) (per curiam); *see also Winter v. Natural Res. Def. Council, Inc.*, 555
2  U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy
3  never awarded as of right"). A plaintiff seeking a preliminary injunction must show that
4  (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without
5  an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the
6  public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are
7  'serious questions going to the merits'—a lesser showing than likelihood of success on the
8  merits—then a preliminary injunction may still issue if the 'balance of hardships tips
9  sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell*
10 *Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance*
11 *for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this serious
12 questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger
13 showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at
14 1072.

15 Regardless of which standard applies, the movant "has the burden of proof on each
16 element of the test." *See Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016,
17 1027 (E.D. Cal. 2000). Further, there is a heightened burden where a plaintiff seeks a
18 mandatory preliminary injunction, which should not be granted "unless the facts and law
19 clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1441 (9th
20 Cir. 1986) (citation omitted).

21 The Prison Litigation Reform Act imposes additional requirements on prisoner
22 litigants who seek preliminary injunctive relief against prison officials and requires that
23 any injunctive relief be narrowly drawn and the least intrusive means necessary to correct
24 the harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987,
25 999 (9th Cir. 2000).

26 . . .
27 . . .
28 . . .

## II.     Motion for Temporary Restraining Order

### A.     Parties' Contentions

In his Motion, Plaintiff seeks an Order directing Defendants to provide him with anti-viral medications to treat his Hepatitis C and to stop interfering with his specialist's recommendations for surgical repair of Plaintiff's gallbladder leak. (Doc. 78.) Plaintiff asserts that the ADC's "Hepatitis C Protocol deliberately delays treatment for Hepatitis C through the administration of [anti-viral drugs]" by "bar[ring] those without vast fibrosis or cirrhosis from being approved for treatment with [anti-viral] medications." (*Id.* ¶¶ 15–16.) Plaintiff also asserts that "delaying treatment for patients until they develop advanced liver disease leads to significant suffering, increased risk of cancer, need for liver transplants, and death." (*Id.* ¶ 25.)

Plaintiff states that he suffers from the following Hepatitis C-related symptoms: fatigue, exhaustion, stomach aches, kidney pains, liver pain, anxiety, muscle weakness, constipation, and "poison-like symptoms." (*Id.* ¶ 27.) Plaintiff also states that several Incident Command System (ICS) emergencies have been activated after he has been found unresponsive, delirious, suffered a seizure, and he has been bed-ridden for months. (*Id.* ¶ 28.) Plaintiff asserts that he was taken to the hospital on January 31, 2020 and was advised that his "gallbladder was leaking due to a large hole" and that he would be transferred to another hospital for emergency surgery, but the surgery was cancelled by Centurion. (*Id.* ¶¶ 29–30.)

Plaintiff asserts that Defendants denied him treatment for Hepatitis C "pursuant to policy, not because of any medical exclusions." (*Id.* ¶ 17.) Plaintiff argues that he "has fibrosis and was denied [anti-viral] medications because he does not have cirrhosis or vast fibrosis. (*Id.* at 8.)

In response, Defendants present the following evidence of Plaintiff's medical treatment. (*See* Doc. 89-1 at 2–6 (Orm Decl.).) On July 1, 2019, Centurion became the contracted healthcare provider for ADC prisons. (*Id.* ¶ 5.) The determination for treatment prioritization for ADC prisoners diagnosed with Hepatitis C is made according to the

prisoner's fibrosis score.  (*Id.* ¶ 8.)  Prisoners with fibrosis scores of F3 and F4 are prioritized for treatment.  (*Id.*)  Prisoners with fibrosis scores of F1 or F2 may also be considered for treatment if there is a co-infection, such as Hepatitis B or HIV or other co-morbid condition, which increases health risk or may hinder or complicate future treatment of either condition.  (*Id.*)

Prisoners who are deemed a high priority for treatment based on fibrosis score will also undergo further workup to assess for underlying cirrhosis, so that a safe and appropriate treatment recommendation can be made.  (*Id.* ¶ 9.)  Additionally, Centurion has a Hepatitis C Specialist who advises regarding testing and treatment of the higher priority patients as well as a Hepatitis C Committee to additionally review and assess Hepatitis C infected patients.  (*Id.* ¶ 10.)

Centurion follows the ADC Hepatitis C Guidelines, which are consistent with the American Association for the Study of Liver Diseases and Infectious Diseases Society of America (AASLD/IDSA) Guidelines.  (*Id.* ¶ 14.)  The ADC's *Clinical Practice Guidelines for the Prevention and Treatment for Viral Hepatitis C* ("ADC Guidelines") provides that prisoners who have advanced hepatic fibrosis, who have undergone a liver transplant, or who have certain comorbid conditions associated with Hepatitis C are classified as Priority Level 1 or "High Priority" for HCV treatment.  (Doc. 89-1 at 75.)  Prisoners who have a liver biopsy indicating Stage 2 fibrosis, a Hepatitis B or HIV co-infection, or co-morbid liver disease, kidney disease, or diabetes are considered Priority Level 2 or "Intermediate Priority" for HCV treatment.  (*Id.*)  Finally, prisoners who have a liver biopsy indicating Stage 0 or 1 fibrosis are considered Priority Level 3 or "Low Priority" for HCV treatment.  (*Id.*)

In or about July 2020, ADC began collaborating with the Arizona Department of Health Services and will be able to treat more patients with direct acting anti-viral therapy.  (*Id.* ¶ 13.)  Centurion is on track to more than triple the number of patients treated for Hepatitis C this year.  (*Id.*)

After Centurion became ADC's contracted healthcare provider, Plaintiff began to have his fibrosis score routinely measured. (Orm Decl. ¶ 15.) In October 2019, Plaintiff's fibrosis score was 0.54, correlating to F2 level and Inflammation Activity grade A1 and indicating minimal activity. (*Id.*) A subsequent test on September 29, 2020 showed that Plaintiff's fibrosis score of 0.53, continuing to correlate to F2 level and minimal inflammatory activity. (*Id.*) Plaintiff was seen in the chronic care clinic on October 5, 2020, and the results of his fibrosis test were relayed to him. (*Id.* ¶ 18.) Plaintiff's medical provider informed the Hepatitis C Regional Committee that although Plaintiff was not prioritized for treatment, he could be treated in 2021, even if he remains F2 level and that "hopefully we'll be treating F2's within the next year." (*Id.*)

Plaintiff's lab results have shown no evidence of worsening of liver disease, and he continues to have very low levels of liver enzyme elevation, normal platelets, normal albumin levels and no anemia—results which are all consistent with chronic but stable and low level Hepatitis C activity. (*Id.* ¶ 16.)

In recent months, Plaintiff has complained of abdominal pain with nausea and vomiting. (*Id.* ¶ 21.) Plaintiff underwent a bowel resection approximately 15 years ago. (*Id.*) Plaintiff has been seen repeatedly and treated for chronic constipation. (*Id.*) Plaintiff had abdominal x-rays taken on October 2, 2020, all without significant findings. (*Id.*) On November 12, 2020, Plaintiff had an abdominal ultrasound, which revealed a normal sized liver with unremarkable echotexture, no hepatic capsular nodularity and no ascites—all which discount the presence of significant liver disease or cirrhosis. (*Id.* ¶ 23.) No masses were identified on Plaintiff's liver. (*Id.*)

On November 17, 2020, the medical provider submitted a gastroenterology consult request; the request was approved, and Plaintiff was scheduled for January 16, 2021. (*Id.* ¶ 24.)

On December 30, 2020, Plaintiff underwent a CT scan after reporting recurrent pain and vomiting. (*Id.* ¶ 25.) The CT scan showed gallbladder distention associated with mild binary tree dilatation, and no obstructive bowel patterns. (*Id.*) Thereafter, Plaintiff was

transferred to a tertiary care center for an abdominal MRI/MRCP, and the physician noted an unremarkable abdominal examination, very mild elevation of liver enzymes consistent with Hepatitis C, but no lab findings indicating cirrhosis, infection or pancreatitis.  (*Id.*)  Plaintiff underwent an abdominal MRI/MRCP on December 31, 2020, which revealed no focal lesions of the liver spleen or pancreas, normal adrenal glands and kidneys, no intra-abdominal adenopathy, no gallstones and common bile duct with no filling defect that would indicate obstruction or retained stone.  (*Id.*)  Plaintiff was discharged back to the prison that same day.  (*Id.*)

On January 16, 2021, Plaintiff was seen off-site by a gastroenterologist who noted that Plaintiff's abdominal pain could be multifactorial.  (*Id.* ¶ 27.)  The gastroenterologist recommended a colonoscopy, and the treatment plan included an EGD and continued treatment for chronic constipation and acid reflux.  (*Id.*)  Plaintiff was scheduled for a colonoscopy and EGD at the end of January 2021.  (*Id.*)

**B.     Discussion**

The Court will deny Plaintiff's motion for injunctive relief because he has failed to show that he is likely to succeed on the merits of his claim.  To establish a likelihood of success on the merits of an Eighth Amendment medical care claim, a prisoner must demonstrate "deliberate indifference to serious medical needs."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The prisoner must show (1) that his condition constitutes a "serious medical need" and (2) that the defendant's current response to that need is deliberately indifferent.  *Jett*, 439 F.3d at 1096.

Based on the available record, Plaintiff's Hepatitis C has been consistently monitored through regular examinations and lab tests of his liver enzyme levels and inflammation levels.  Plaintiff's inflammation remains at F2, and his most recent abdominal MRI/MRCP, x-rays, and ultrasounds were unremarkable and did not show any signs of worsened liver disease or cirrhosis.  At this time, there is no evidence that the providers' decisions regarding Plaintiff's treatment amounted to deliberate indifference.

1    Plaintiff has also failed to establish that he will suffer irreparable harm absent injunctive relief.  The available medical evidence does not show that Plaintiff's Hepatitis C has worsened or progressed since his December 2020 MRI/MRCP that showed no signs of cirrhosis or advanced liver disease.  Moreover, in response to Plaintiff's complaints of abdominal pain, nausea, and vomiting, he was sent to a gastroenterologist and eventually scheduled to for an EGD and a colonoscopy.

Because Plaintiff fails to produce evidence to show a likelihood of success on the merits or that he faces a likelihood of irreparable harm, the Court will deny Plaintiff's motion and will not address any of the other *Winter* factors.  *See Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011) (because the plaintiffs failed to show they are likely to suffer irreparable harm in the absence of preliminary relief, the court need not address the remaining elements of the preliminary injunction standard).

**IT IS ORDERED** that the reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion for Temporary Restraining Order (Doc. 78), and the Motion is **denied**.

Dated this 13th day of April, 2021.

Michael T. Liburdi
United States District Judge

- 7 -